# 24-2451-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



MID-NEW YORK ENVIRONMENTAL AND SUSTAINABILITY PROMOTION
COMMITTEE, INC., DOING BUSINESS AS NYENVIRONCON,
ROBERT MAJCHER, GRACE WOODARD, ALEX SCILLA,

*Plaintiffs-Appellants,*

*v.*

DRAGON SPRINGS BUDDHIST, INC.,

*Defendant-Appellee.*

―――――――――――

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF AND SPECIAL APPENDIX FOR
## PLAINTIFFS-APPELLANTS

E. Christopher Murray
RIVKIN RADLER LLP
*Attorneys for Plaintiffs-Appellants*
926 RXR Plaza
West Tower, 9th Floor
Uniondale, New York 11556
516-357-3000



(212) 719-0990
appeals@phpny.com

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

JURISDICTIONAL STATEMENT ............................................................ 3

ISSUES PRESENTED ................................................................................ 4

STATEMENT OF FACTS ......................................................................... 4

      A.    Construction Activities At The Premises ............................. 5

      B.    Discharge Into The Basher Kill And Neversink River ......... 6

PROCEDURAL HISTORY ...................................................................... 11

ORDER UNDER REVIEW ...................................................................... 11

SUMMARY OF ARGUMENT ................................................................ 12

STANDARD OF REVIEW ...................................................................... 12

POINT I ................................................................................................... 13

      THE NOI CLEARLY IDENTIFIES THE VIOLATION
      BEING ALLEGED ..................................................................... 13

POINT II .................................................................................................. 16

      THE NOI CLEARLY SETS FORTH THE POINT
      SOURCE FOR THE DISCHARGE OF FECAL
      COLIFORM ................................................................................. 16

POINT III ................................................................................................ 19

      THE DISTRICT COURT ERRED IN DISMISSING
      THE AMENDED COMPLAINT WITH PREJUDICE .............. 19

CONCLUSION ........................................................................................ 20

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a) ......................... 21

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*,
273 F.3d 481 (2d Cir. 2001) ...........................................................17, 19

*Concerned Area Residents for the Environment v. Southview Farms*,
34 F.3d 114 (2d Cir. 1994), *cert. denied*, 514 U.S. 1082 (1995) ................16, 17

*County of Maui, Hawaii v. Hawaii Wildlife Fund*,
590 U.S. 165, 140 S. Ct. 1462 (2020)..................................................17

*Flynn v. Bloomingdale*,
2023 U.S. App. LEXIS 19447 (2d Cir. July 28, 2023) ......................................12

*Karr v. Hefner*,
475 F.3d 1192 (10th Cir. 2007) ............................................................18

*Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.*,
647 F. Supp. 3d 286 (S.D.N.Y. Dec. 28, 2022)..................................................11

*Simsbury-Avon Pres. Club, Inc. v. Mertacon Gun Club, Inc.*,
575 F.3d 199 (2d Cir. 2009) .............................................................17

*United States v. Plaza Health Labs, Inc.*,
3 F.3d 643 (2d Cir. 1993), *cert. denied*, 512 U.S. 1245, 114 S. Ct. 2764 (1994)...............17

**Statutes and Other Authorities**

28 U.S.C. §1291 ...................................................................................3

28 U.S.C. §1331 ...................................................................................3

28 U.S.C. §1367 ...................................................................................3

33 U.S.C. §1311(a) ....................................................................2, 13, 14

33 U.S.C. §1342 §§ 301(a) and 402 ..........................................2, 13, 14

33 U.S.C. §1362(14) ...........................................................................17

33 U.S.C. §1365 ...................................................................................3

Fed. R. Civ. P. 12(b)6 ........................................................................11

Fed. R. Civ. P. 12(b) ..........................................................................12

## PRELIMINARY STATEMENT

Appellants, an environmental group and local residents who live or own property in the Town of Deerpark, New York, commenced this action because Defendant-Respondent Dragon Springs Buddhist, Inc. ("Dragon Springs"), the owner of a large compound in the Town of Deerpark, has been discharging Fecal Coliform into the Basher Kill and the Neversink River without a permit. Testing over a three-year period has shown that immediately upstream from Dragon Springs' property the level of Fecal Coliform is at or below standards that are acceptable, but immediately adjacent to Dragon Springs' property, which contains a wastewater treatment plant on top of a steep hill with gulleys running into these bodies of water, the level of Fecal Coliform skyrockets. There is no other potential source for the Fecal Coliform in this location and no permit that allows Dragon Spring to discharge Fecal Coliform into surface water.

Prior to answering, Dragon Springs moved to dismiss contending that the Notice of Intent ("NOI") required under the Clean Water Act before a citizen's suit can be commenced was insufficient. The District Court agreed, holding that the NOI did not indicate the permit limitation that was violated. However, the Clean Water Act violation was the discharge of the pollutant Fecal Coliform without a permit and this is clearly set forth in the NOI (A. 406-411), which states:

1

Dragon Springs discharged and continues to discharge
storm water containing Fecal Coliform as a result of Dragon
Springs' failure to properly maintain its wastewater
treatment plant and the construction activity at the
Compound. This discharge is through point sources at the
Compound 600 to 1,000 feet southwest of the bridge at
Galley Hill Road into to the waters of the United States.
Dragon Springs' SPDES Permit and General Construction
Permit do not allow for the discharge of Fecal Coliform to
surface water, and Dragon Springs does not have any other
permit authorizing such discharges. Each and every day
Dragon Springs discharges storm water without
authorization under its SPDES Permit and General
Construction Permit are separate and distinct violations of
CWA Section 301(a) and 402, 33 U.S.C. §§1311(a) and
1342.

Further, Dragon Springs discharged and continues to
discharge wastewater containing Fecal Coliform as a result
of Dragon Springs' failure to properly maintain its
wastewater treatment plant and the construction activity at
the Compound. This discharge is through point sources at
the Compound 600 to 1,000 feet southwest of the bridge at
Galley Hill Road into the waters of the United States.
Dragon Springs' SPDES Permit and General Construction
Permit do not allow for the discharge of Fecal Coliform to
surface water, and Dragon Springs does not have any other
permit authorizing such discharges. Each and every day
Dragon Springs discharges wastewater without
authorization under its SPDES Permit is a separate and
distinct violation of CWA Section 301(a) and 402, 33
U.S.C. §§1311(a) and 1342.

Further, the District Court held that the NOI did not identify a point source

for the discharge. The NOI provided information with regard to the specific area of

surface water immediately adjacent to Dragon Spring's property where the high

levels of Fecal Coliform were observed; that testing immediately upstream from

2

Dragon Springs' property did not show any elevated levels of Fecal Coliform; described the testing that has been done to confirm the discharge; describes the hill immediately adjacent to the polluted surface water which runs to Dragon Springs' compound that includes a wastewater treatment plant and contains gullies from the top of the hill to the surface water; and sets forth that no other property could have been the source of the Fecal Coliform. This description is sufficient and the District Court erred in dismissing the Amended Complaint based on the NOI.

## JURISDICTIONAL STATEMENT

Plaintiffs commenced this action in the United States District Court for the Southern District of New York under 33 U.S.C. §1365 and 28 U.S.C. §1331; and New York State Common Law and 28 U.S.C. §1367. By Opinion and Order dated September 11. 2024 (A. 539-542) the District Court (Hon. Kenneth M. Karas) granted Dragon Springs' motion to dismiss. Plaintiffs appeal from this Opinion and Order and the Court has jurisdiction over Plaintiffs' appeal pursuant to 28 U.S.C. §1291.

## ISSUES PRESENTED

Did the District Court improperly dismiss the Amended Complaint based on the claim that the Notice of Intent was defective?

Yes

Did the District Court err in dismissing the Amended Complaint with prejudice?

Yes

## STATEMENT OF FACTS

As set forth in the Amended Complaint, Dragon Springs is operated by the Falun Gong movement, which has millions of followers worldwide. (A. 8-25). Falun Gong promotes traditional Chinese philosophies and claims persecution by the People's Republic of China. (A. 8). Dragon Springs also operates the eight Shen Yun performing arts companies that appear worldwide and have practice facilities at Dragon Springs property in the Town of Deerpark, New York ("Premises"). (A. 12). The Premises acts as the worldwide headquarters for Falun Gong, which is also the publisher of The Epoch Times. (A. 12).

The Premises is located on a mountainside in the southern tier of the Shawangunk Mountains in a rural section within the Town of Deerpark, Orange County with many environmentally sensitive areas, including the Basher Kill, Neversink River and associated wetlands. (A. 12). The Premises on the northeast

4

side is a steep slope to the immediately adjacent Basher Kill and Neversink River. (A. 12). The slope contains gullies and pathways that are point sources that empty into these waters. (A. 12).

These waterways are an integral part of the rural beauty of the area and provide recreational resources to residents and visitors alike. (A. 12). The Basher Kill empties into the Neversink River that then empties into the Delaware River. (A. 12). Both the Neversink and Delaware Rivers are currently used, were used in the past, or are susceptible to use in interstate or foreign commerce. (A. 12).

Access to the Premises by the general public is prevented by fencing along the property line, security gates, security guards, security dogs, woods, and its elevation. (A. 12). The Premises consists of numerous buildings, including a performing arts center and a wastewater treatment plant. (A. 13).

## A.    Construction Activities At The Premises

In the spring of 2021, increased construction activities were observed at the Premises. (A. 17). Large construction vehicles were seen entering and construction activity could be heard. (A. 17). This included in July and August of 2021 when numerous dump trucks were going to the Premises. (A. 17). Further, construction

sounds can be heard coming from the Premises, and trucks carrying fill and Porta Potties have been observed in August of 2021. (A. 17).

In addition, overhead photographs of the Premises reflect construction work being undertaken, including the installation of solar panels and stockpiles of construction material. (A. 17). When requests were made to the Town of Deerpark under New York State's Freedom of Information Law for any permits issued for this construction, the Town of Deerpark responded that there were none. (A. 17). In addition, when a Town inspector tried to go into the Premises he was met by a Dragon Springs employee. (A. 17). When the inspector observed work being undertaken on a retaining wall, fence and storm water drain he was told he could not take pictures. (A. 17). Then, when he tried to gain access to other portions of the Premises, he was informed this area was not open to the public and if he wanted access he "should see a judge". (A. 17). There continues to be substantial construction occurring at the Premises. (A. 17).

## B.   Discharge Into The Basher Kill And Neversink River

At the same time as this construction activity, including the alterations to the wastewater treatment plant, the volume of water and corresponding spike in Fecal Coliform in the Basher Kill and Neversink River adjacent to the Compound were observed. (A. 18).

6

For example, runoff of storm water from the Premises, as well as wastewater from the wastewater treatment plant, through the gullies and steep slope on Dragon Springs' property has dramatically increased the size of the stream alongside the Basher Kill to 30 feet wide and approximately 600 feet long, as well as increasing the width of the Basher Kill. (A. 18).

Also testing of the water immediately adjacent to the Compound shows high levels of Fecal Coliform beyond the limits of any permit or applicable law. (A. 18). Specifically, Dragon Springs is the Permittee of a SPDES Permit issued by the New York State Department of Environmental Conservation ("DEC"), which has been delegated the authority by the United States Environmental Protection Agency to issue SPDES Permits under the National Pollutant Discharge Elimination System. (A. 18).

Dragon Springs' SPDES Permit does not allow for the discharge of Fecal Coliform from the Premises to the surrounding surface water. Instead, Dragon Springs' SPDES Permit only allows discharge from the wastewater treatment plant at the Premises to underground treatment systems and for the treated wastewater to be discharged to subsurface groundwater. Further, under the SPDES permit, the amount of Fecal Coliform that may be discharged into the groundwater is restricted to an Effluent Limit to a daily mean of 200 parts per 100 ml during the months of May 1 through September 30. (A. 18).

7

Dragon Springs is also subject to a Construction General Permit, which requires Dragon Springs to comply with the requirements of its SPDES Permit, and the Construction General Permit does not permit the discharge of Fecal Coliform into the surface waters adjacent to the Compound. (A. 18-19). In addition, 6 CRR-NY 703.4 contains surface water quality standards. (A. 19). This New York regulation restricts the amount of Fecal Coliform in surface water to 200 parts per 100 ml. (A. 19).

From May 1, 2021 to the present, Dragon Springs is in violation of the Clean Water Act by discharging Fecal Coliform through wastewater and storm water runoff from point sources at the Premises to the surrounding surface waters. (A. 19). Further, as a result of the discharge by Dragon Springs, the level of Fecal Coliform in the surface water adjacent to Dragon Springs' compound is far in excess of the DEC standard of 200 parts per 100 ml. (A. 19).

The amount of Fecal Coliform in the surrounding waters in August 2021 contained 726 parts of Fecal Coliform per 100 ml, over three times the permitted amount. (A. 19). Further, this illegal discharge has been occurring at least since 2020. (A. 19). Testing done in July 2020 reflected Fecal Coliform amounts of 461 parts per 100 ml, in August 2020 Dragon Springs discharged water with Fecal Coliform amounts of 290 parts per 100 ml. In addition, the Fecal Coliform amounts in the surrounding water on August 8, 2022, were 2419.6 parts per 100 ml; on

8

October 14, 2022 2419.6 parts per 100 ml; on November 9, 2022 344.8 parts per 100 ml; on December 13, 2022 1396 parts per 100 ml, on April 18, 2023 1050 parts per 100 ml, and on July 27, 2023 517.2 parts per 100 ml. (A. 19).

Further, there can be no doubt that the Compound is the source of the Fecal Coliform. Testing of the waters immediately upstream from the Compound consistently do not reflect any elevated levels of Fecal Coliform. Elevated levels of Fecal Coliform are only found in the water immediately adjacent to the Compound. (A. 19).

For example, testing undertaken on April 18, 2023 reflected a Fecal Coliform level of 1050 parts per 100 ml in the waters immediately adjacent to the Compound, but testing at two locations upstream reflected 70.6 and 67.7 parts per 100 ml. Similarly, testing on July 27, 2023 showed Fecal Coliform of 517.2 parts per 100 ml in the waters immediately adjacent to the Compound, but testing at two locations upstream showed 50.4 and 7.3 parts per 100 ml. (A. 20).

Below is a chart setting forth the testing results:

| TIME FRAME OF FECAL COLIFORM TESTING | RESULTS ABOVE THE STANDARD OF 200 PARTS PER 100 ML |
|---|---|
| July 2020 | 461 parts of Fecal Coliform per 100 ml. |
| August 2020 | 290 parts of Fecal Coliform per 100 ml |
| August 2021 | 726 parts of Fecal Coliform per 100 ml. |
| August 2022 | 2419.6 parts of Fecal Coliform per 100 ml. |
| October 2022 | 2419.6 parts of Fecal Coliform per 100 ml. |
| November 2022 | 344.8 parts of Fecal Coliform per 100 ml. |

9

| December 2022 | 1396 parts of Fecal Coliform per 100 ml. |
| April 2023 | 1050 parts of Fecal Coliform per 100 ml. |
| July 2023 | 517.2 parts of Fecal Coliform per 100 ml. |

Prior to the commencement of this action plaintiffs served the NOI on Dragon Springs, the EPA and the DEC. This action was filed more than sixty days after service of the NOI.

## PROCEDURAL HISTORY

In 2022, Plaintiffs filed a CWA action against Dragon Springs, which was ultimately dismissed "without prejudice to refiling after submission of a conforming NOI and after the 60-day delay required by the CWA." In fact, Judge Briccetti indicated that the NOI letter might have been sufficient had it contained the amended complaint's allegations concerning the test results of the excess amounts of Fecal Coliform. *Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc*., 647 F. Supp. 3d 286, 291-292 (S.D.N.Y. Dec. 28, 2022).

On January 9, 2023, Plaintiffs provided notice of Dragon Springs' violation of the Clean Water Act and of their intention to file suit to Dragon Springs, the Administrator of the United States Environmental Protection Agency, Region 2, and the New York State Department of Environmental Conservation. (A. 28-29, A. 10, A. 406-411). This time, the NOI specifically included, among other added details, the results of the July 2020, August 2020, August 2021, August 2022, October 2022, November 2022, and December 2022 test as set forth in the chart above.

## ORDER UNDER REVIEW

After Plaintiffs amended the complaint, Dragon Springs moved to dismiss the Amended Complaint. By the Order the Court granted the motion pursuant to Fed. R. Civ. P. 12(b)6. (A. 539-542). The District Court held that Plaintiffs failed to

specify the permit limitation that Dragon Springs was violating and held that the NOI did not specify a point source for the discharge.

## SUMMARY OF ARGUMENT

In Point I, it will be demonstrated that the NOI specified that there was no permit which allowed Dragon Springs to discharge of Fecal Coliform into surface water. In Point II, it will be shown that the point source of the discharge was adequately described in the NOI. Finally, in Point III it will be shown that the District Court erred in dismissing the Amended Complaint with prejudice.

## STANDARD OF REVIEW

Appellate Courts review a dismissal under Rule 12(b) de novo, accepting all factual allegations in the Complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Flynn v. Bloomingdale*, 2023 U.S. App. LEXIS 19447 (2d Cir. July 28, 2023)

## POINT I

### THE NOI CLEARLY IDENTIFIES THE VIOLATION BEING ALLEGED

The NOI includes a description of the discharge of Fecal Coliform, that the discharge was without a permit, and the showing that Fecal Coliform is in fact being disbursed to surface water by Dragon Springs. Yet, while the District Court stated that "in the absence of a permit, the CWA's general proscription of discharging pollutants applies . . . But it is something of an oxymoron to suggest that Defendant violated its permits by discharging Fecal Coliform into surface waters." However, the NOI made clear that the violation by Dragon Springs was discharging Fecal Coliform from its compound without a permit.

Specifically, the NOI states:

> Dragon Springs discharged and continues to discharge storm water containing Fecal Coliform as a result of Dragon Springs' failure to properly maintain its wastewater treatment plant and the construction activity at the Compound. This discharge is through point sources at the Compound 600 to 1,000 feet southwest of the bridge at Galley Hill Road into to the waters of the United States. Dragon Springs' SPDES Permit and General Construction Permit do not allow for the discharge of Fecal Coliform to surface water, and Dragon Springs does not have any other permit authorizing such discharges. Each and every day Dragon Springs discharges storm water without authorization under its SPDES Permit and General Construction Permit are separate and distinct violations of CWA Section 301(a) and 402, 33 U.S.C. §§1311(a) and 1342.

13

> Further, Dragon Springs discharged and continues to discharge wastewater containing Fecal Coliform as a result of Dragon Springs' failure to properly maintain its wastewater treatment plant and the construction activity at the Compound. This discharge is through point sources at the Compound 600 to 1,000 feet southwest of the bridge at Galley Hill Road into the waters of the United States. Dragon Springs' SPDES Permit and General Construction Permit do not allow for the discharge of Fecal Coliform to surface water, and Dragon Springs does not have any other permit authorizing such discharges. Each and every day Dragon Springs discharges wastewater without authorization under its SPDES Permit is a separate and distinct violation of CWA Section 301(a) and 402, 33 U.S.C. §§1311(a) and 1342.

Under the Clean Water Act the discharge of a pollutant without a permit is a violation. Specifically, 33 U.S.C. §1311(a) states that without a permit "the discharge of any pollutant by any person shall be unlawful."

Thus, the District Court's apparent reasoning that the NOI was deficient because it only alleged that Dragon Spring's SPDES permit was being violated by the discharge of Fecal Coliform is nonsensical. The violation was the discharge of Fecal Coliform without a permit. The NOI also made clear that the SPDES permit did not allow for the discharge of Fecal Coliform. These are not mutually exclusive and are spelled out in the NOI.

Further, the District Court's statement that because the SPDES permit does not prohibit the discharge of Fecal Coliform is irrelevant and factually incorrect. While the SPDES permit does not affirmatively prohibit the discharge of Fecal

14

Coliform into surface water on its face it allows for the discharge of Fecal Cloriform into a groundwater septic system. And, Dragon Springs flatly admits its SPDES permit only allows the discharge of Fecal Coliform into an underground system. If the SPDES permit admittedly only allows for the discharge of Fecal Coliform to an underground septic system, logically it does not permit the discharge of Fecal Coliform into surface water.

Accordingly, since the NOI specifically state that Dragon Springs is discharging Fecal Coliform into surface water without a permit, the NOI clearly identifies the violation at issue.

## POINT II

### THE NOI CLEARLY SETS FORTH THE POINT SOURCE FOR THE DISCHARGE OF FECAL COLIFORM

Pursuant to the NOI, Dragon Spring is discharging Fecal Coliform from its property as it runs down the hill and empties into the Basher Kill and Neversink Rivers. As set forth in the NOI, testing reflects that immediately upstream from Dragon Springs property there are normal levels of Fecal Coliform but immediately adjacent to the hill running from the Dragon Springs' compound the levels are extremely elevated. Further, there are no other potential sources of Fecal Coliform, and the compound has a wastewater treatment plant that has been cited for numerous violations. (A. 19).

Accordingly, it is hardly a leap of logic that high levels of Fecal Coliform are in the waters immediately adjacent to a property, but not up stream, and there are no other sources of Fecal Coliform other than the property which just happens to have a waste water treatment plant, and the property has a hill with gullies that run into the water, that the property is discharging Fecal Coliform and the gullies and hill on the property is the point source.

The Clean Water Act prohibits the discharge of pollutants into the waters of the United States from a point source without a permit. *Concerned Area Residents for the Environment v. Southview Farms*, 34 F.3d 114, 117 (2d Cir. 1994), *cert.*

16

*denied*, 514 U.S. 1082 (1995); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 486 (2d Cir. 2001). Under the Clean Water Act "[t]he term 'point source' means any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged." 33 U.S.C. §1362(14). The "definition of a point source is to be broadly interpreted[.]" *Simsbury-Avon Pres. Club, Inc. v. Mertacon Gun Club, Inc*., 575 F.3d 199, 219 (2d Cir. 2009).

For example, in *Concerned Area Residents for the Environment*, 34 F.3d 114, this Court held "that the swale coupled with the pipe under the stonewall leading into the ditch that leads into the stream was in and of itself a point source" as well as the manure spreading machines. Here, you have a waste water treatment plant on top of hill that has gullies that lead to surface water where high levels of Fecal Coliform are found when no high levels are found immediately upstream. The Fecal Coliform had to be discharged at this point of Dragon Springs's property, and the fact that the hillside is not a manmade structure does not prevent it from being a point source. Cf *County of Maui, Hawaii v. Hawaii Wildlife Fund,* 590 U.S. 165, 140 S. Ct. 1462 (2020) (requiring point source to flow immediately into surface water is reading the Clean Water Act to narrowly).

As for the cases cited by the District Court they are in opposite. In *United States v. Plaza Health Labs, Inc.*, 3 F.3d 643 (2d Cir. 1993), *cert. denied*, 512 U.S. 1245, 114 S. Ct. 2764 (1994) this Court simple held that a human being could not

17

be a point source, something not relevant here. As for *Karr v. Hefner*, 475 F.3d 1192 (10th Cir. 2007) the Court observed that no point source was identified

Here, Plaintiffs NOI states that Dragon Springs contains a steep slope immediately adjacent to the Basher Kill and Neversink River, that the slope contains gullies and pathways that empty into these waters, and immediately next to the slope the level of Fecal Coliform is extremely high. Specifically, the NOI states:

> The Compound is located in the southern tier of Shawangunk Mountain. The Dragon Springs' property on the northeast side is a steep slope from the Compound to the immediately adjacent Basher Kill and Neversink River. The slope contains gullies and pathways from the Compound that are point sources that empty into to these waters. These waterways are an integral part of the rural beauty of the area and provide recreational resources to residents and visitors alike.

As to the District Court's observation and Dragon Springs argument that the NOI does not specify why these discharges are taking place that is not an element of the violation. Simply put, the Clean Water Act prohibits the discharge of pollutants into surface water without a permit, a showing as to why the discharge is taking place is not required. Further, here, prior to any discovery, Plaintiffs have no access to Dragon Springs' compound to determine why this pollutant was being discharged. (A. 12).

Accordingly, the NOI properly identified a point source.

18

## POINT III

**THE DISTRICT COURT ERRED IN DISMISSING THE AMENDED COMPLAINT WITH PREJUDICE**

Citing no relevant law, the District Court dismissed the Amended Complaint with Prejudice even though if there's deficiency in the NOI Plaintiffs are entitled to correct any such deficiencies. Under well settled law if a complaint asserting a claim under the Clean Water Act for failure to comply with NOI requirements is dismissed because of deficiencies in a NOI it should be without prejudice. See *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 485 (2d Cir. 2001) (directing the CWA claims be dismissed without prejudice to refiling after submission of a conforming NOI letter). This is especially true because the violations are ongoing, Fecal Coliform continues to be discharge into the Basher Kill and Neversink Rivers, and Dragon Springs should not be given a free pass to continue discharging pollutants in violation of the Clean Water Act.

19

## <u>CONCLUSION</u>

For the reason set forth above, the Opinion and Order under review should

be reversed.

Dated:   Uniondale, New York
         November 7, 2024

                           RIVKIN RADLER LLP

              By:          _____
                           E. Christopher Murray
                           Elizabeth S. Sy
                           *Attorney for Plaintiffs-Appellants*
                           926 RXR Plaza
                           Uniondale, New York 11556
                           Tel.: (516) 357-3000
                           RR File No.: 13478-1

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,019 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft© Word in Times New Roman, 14 point font.

Dated:   Uniondale, New York
             November 7, 2024

                                        RIVKIN RADLER LLP

                          By:    _____

                                        E. Christopher Murray
                                        Elizabeth S. Sy
                                        *Attorney for Plaintiffs-Appellants*
                                        926 RXR Plaza
                                        Uniondale, New York 11556
                                        Tel.: (516) 357-3000
                                        RR File No.: 13478-1

4889-8588-2100, v. 2

21

**SPECIAL APPENDIX**

**<u>Table of Contents</u>**

<u>Page</u>

Opinion and Order of the Honorable Kenneth M. Karas,
    dated September 11, 2024 ............................................................  SPA1

Judgment of the United States District Court, Southern District
    of New York, entered September 11, 2024 ..............................  SPA23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MID-NEW YORK ENVIRONMENTAL
AND SUSTAINABILITY PROMOTION
COMMITTEE, INC., *d/b/a*,
NYENVIRONCON, ROBERT MAJCHER,
GRACE WOODARD, *and* ALEX SCILLA,

        Plaintiffs,

  v.

DRAGON SPRINGS BUDDHIST, INC.,

        Defendant.

No. 23-CV-4870 (KMK)

OPINION & ORDER

---

Appearances:

Elizabeth S. Sy, Esq.
Christopher E. Murray, Esq.
Rivkin Radler LLP
Uniondale, NY
*Counsel for Plaintiffs*

Joshua J. Grauer, Esq.
Brendan Markham Goodhouse, Esq.
Michael Vincent Caruso, Esq.
Cuddy & Feder, LLP
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

   The Mid-New York Environmental and Sustainability Promotion Committee

("NYenvironcon"), Robert Majcher, Grace Woodard, and Alex Scilla ("Individual Plaintiffs";

collectively, "Plaintiffs") bring this Action, pursuant to 33 U.S.C. § 1365 and New York state

law, against Dragon Springs Buddhist, Inc., ("Dragons Springs" or "Defendant"), alleging

Defendant discharged Fecal Coliform into waters surrounding its property. (*See generally* FAC

(Dkt. No. 14).)  Before the Court is Defendant's Motion To Dismiss.  (Not. of Mot. (Dkt. No. 19).)  For the following reasons, the Motion is granted.

## I.  Background

### A.  Materials Considered

As an initial matter, the Court must determine whether it may consider certain exhibits attached to Defendant's Motion, including: (1) permits issued to Defendant by the New York State Department of Environmental Conservation ("NYSDEC"), (*see* Decl. of Joshua J. Grauer, Esq. ("Grauer Decl."), Exs. B , C (Dkt. Nos. 20-2, 20-3.); (2) Defendant's stormwater pollution prevention plan ("SWPP") (*see id.*, Ex. D (Dkt. No. 20-4)); (3) Plaintiffs' Notice of Intent to Sue ("NOI"), (*see id.*, Ex. E (Dkt. No. 20-5)); (3) a NOI filed in a case relied on by Defendant, (*see id.*, Ex. G (Dkt. No. 20-7)); (4) a letter from NYSDEC to Defendant regarding the instant suit, (*see id.*, Ex. F (Dkt. No. 20-6)); (5) several selections from webpages discussing the background of NYenvironcon and the Individual Plaintiffs, (*id.*, Exs. H, I, J (Dkt Nos. 20-8, 20-9, 20-10)); and (6) materials issued by the Department of State and Department of Justice (*id.* Exs. K, L (Dkt. Nos. 20-11, 20-12)).

Generally, "when considering a motion to dismiss, the Court's review is confined to the pleadings themselves, because to go beyond the allegations in the complaint would convert the Rule 12(b)(6) motion to dismiss into one for summary judgment pursuant to Rule 56." *Garcia v. Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 396 (S.D.N.Y. 2023) (alterations adopted) (quotation marks omitted).  However, "the Court's consideration of documents attached to, or incorporated by reference in the complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Id.* (alteration adopted); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety, as well

2

as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice") (quotation marks omitted); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken.'") (alteration adopted) (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993)). "[A] court may incorporate documents referenced where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed." *Stewart v. Riviana Foods Inc.*, No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis omitted) (collecting cases); *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("To be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents, and to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." (alterations adopted) (quoting *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012))).

There is no real dispute that the Court can consider Defendant's Permits and Plaintiffs' NOI. Plaintiffs rely on and substantially reference each of those documents in the FAC, (*see, e.g.*, FAC ¶¶ 3, 6, 9, 44–47), and do not object to their consideration, (*see* Mem. of Law in Opp. ("Pls' Mem.") at 19 (Dkt. No. 25)). Accordingly, those documents are properly incorporated by reference. *See Cromwell-Gibbs v. Staybridge Suite Times Square*, No. 16-CV-5169, 2017 WL 2684063, at *1 n.2 (S.D.N.Y. June 20, 2017) (holding documents incorporated by reference when the complaint made "direct reference" to the documents and their contents).

The Court, however, will not consider Defendant's SWPP or the NYSDEC's letter. Neither document is referenced in the FAC, and neither one—despite its official nature—appears to fit traditional categories of information subject to judicial notice like "documents retrieved from official government websites." *See Douglas v. City of Peekskill*, No. 21-CV-10644, 2023 WL 2632217, at *2 (S.D.N.Y. Mar. 24, 2023) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015)). Although Defendant argues that, to the extent it moves under 12(b)(1), extraneous documents may be considered to resolve disputed jurisdictional facts, *see Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000), it does not identify any disputes of fact for these documents to resolve, (*see generally* Mem. of Law in Supp. of Def's Mot. ("Def's Mem.") (Dkt. No. 21)).

Finally, the Court need not address the remaining exhibits attached to Defendant's Papers. Defendant clarifies that these exhibits only "provide general background information about the parties," and they do not relate in any way to the merits of the instant Motion. (*See* Def's Mem. 12 n.10 (discussing Exs. G–L).)

B.  Factual Background

The following facts are drawn from the FAC and associated documents incorporated by reference and are assumed true for the purposes of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam). To the extent any of the documents "relied on in the [FAC] contradict[] allegations in the [FAC], the document, not the allegations, control, and the [C]ourt need not accept the allegations in the [FAC] as true." *Sander v. Enerco Grp., Inc.*, No. 21-CV-10684, 2023 WL 1779691, at *2 (S.D.N.Y. Feb. 6, 2023) (quoting *Poindexter v. EMI Record Grp. Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012)); *Streamlined*

*Consultants, Inc. v. EBF Holdings LLC*, No. 21-CV-9528, 2022 WL 4368114, at *1 n.2

(S.D.N.Y. Sept. 20, 2022) (same).

Defendant is an organization that acts as the world headquarters of the Falun Gong

movement and hosts eight Shen Yun music and dance companies.  (FAC ¶ 1.)  It operates a

large, roughly 393-acre, compound in Deerpark, New York, comprised of numerous structures

including a school, housing, and a performing arts center.  (*Id*. ¶¶ 1–2.)  The compound also

houses a wastewater treatment plant designed to handle liquid waste generated throughout the

facility, some of which contains the bacteria Fecal Coliform.  (*Id*. ¶ 3.)

Plaintiffs allege that there has been ongoing construction activity at the compound since

the spring of 2021.  (*Id*. ¶ 2.)  And they claim that the construction activity resulted in several

Clean Water Act ("CWA") violations involving the discharge of Fecal Coliform into surrounding

waters.  (*See, e.g.*, *id*. ¶ 5.)  On January 9, 2023, Plaintiffs provided Defendant a Notice of Intent

("NOI") to file a citizen suit concerning these violations as required by 33 U.S.C. § 1365(b).  (*Id*.

¶ 9.)

The FAC contains more detail about the activities giving rise to this case, but the Court

focuses primarily on the NOI.  As explained in greater detail below, the information in the NOI

frames the claims the Court may consider.  Compliance with the CWA notice requirement,

including "identify[ing] the specific standard, limitation, or order alleged to have been violated,"

40 C.F.R. § 135.3(a), is a "mandatory . . . condition precedent for suit," *Hallstrom v. Tillamook

Cnty.*, 493 U.S. 20, 26 (1989).  Failure to satisfy that requirement necessitates dismissal of

claims "not properly noticed."  *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. City

of New York*, 273 F.3d 481, 488 (2d Cir. 2001), *adhered to on reconsideration*, 451 F.3d 77 (2d

Cir. 2006).

The NOI starts by situating Defendant's compound, which is "located in the southern tier of Shawangunk Mountain." (NOI at 2.) The northeast side of the property has a steep slope leading from the compound to the Basher Kill and Neversink Rivers. (*Id*.) And the NOI states that the slope contains "gullies and pathways" that empty into the two rivers and constitute "point sources"—a term of art discussed infra § II.B.2. (*Id*.)

Broadly speaking, the NOI alleges that Defendant discharged wastewater and stormwater containing Fecal Coliform resulting in pollution of the two nearby rivers. But to understand the specific violation it appears to notify Defendant of, some discussion of Defendant's permits is required. In April 2020, NYSDEC issued Defendant a renewed State Pollutant Discharge Elimination System ("SPDES") Permit that, among other things, authorizes the discharge of Fecal Coliform into groundwater subject to an effluent limitation of 200 parts per 100 ml during the period between May 1 through September 30. (NOI at 3.) According to the NOI, the "SPDES Permit does not allow for the discharge of Fecal Coliform from the Compound to the surrounding surface water." (*Id*.)[1] Defendant is also subject to a Construction General Permit ("CGP"), which regulates storm water discharges. (*See id*.)

The NOI claims that "from May 1, 2021 to the present," Defendant was "in violation of its SPDES Permit by discharging Fecal Coliform through wastewater and storm water runoff from point sources at the Compound to the surrounding surface waters." (NOI at 4.) As a result, and according to several tests, the NOI states that the level of Fecal Coliform in the "surrounding waters" exceeded "the daily mean of 200 parts per 100 ml." (*Id*.)[2]

---

[1] As discussed below, this statement in the NOI is inaccurate, as the SPDES Permit contains no language regarding surface water discharges. (*See generally* SPDES Permit.)

[2] It is not entirely clear what this daily mean refers to. Defendant's SPDES Permit sets such a daily mean, but it applies to "groundwater" discharges, (*see* SPDES Permit at 2), as opposed to discharges into "surrounding [surface] water," (NOI at 4). The NOI does reference

**SPA7**

The NOI further states that these discharges resulted from Defendant's "failure to properly maintain its wastewater treatment plant and the construction activity at the Compound." (*Id*. at 4.)  And it alleges that the discharges occurred at "point sources at the Compound 600 to 1,000 feet southwest of the bridge at Galley Hill Road."  (*Id*.)  It claims Defendant's CWA violations are "ongoing from the period beginning on March 12, 2021."  (*Id*. at 5.)

C. Procedural History

This is not the first time the Parties have litigated Plaintiffs' CWA claims regarding Fecal Coliform.  Judge Briccetti considered substantially similar claims in a prior action between the Parties and dismissed Plaintiffs' amended complaint for failure to comply with the CWA's notice requirement.  *See Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.* (*Dragon Springs I*), 647 F. Supp. 3d 286, 292–93 (S.D.N.Y. 2022), *appeal dismissed* (June 20, 2023).  That dismissal, however, was "without prejudice to refiling after submission of a conforming NOI letter."  (*See id*. at 292 (quotation marks omitted)).

Plaintiffs commenced this Action on June 9, 2023.  (*See* Compl. (Dkt. No. 1).)[3] Defendant initially sought leave to file a motion to dismiss on July 31, 2023.  (*See* Dkt. No. 11.) In response, Plaintiffs filed the FAC, leading Defendant to renew its request on September 8,

---

the New York state standard for Fecal Coliform in surface water.  *See* 6 CRR-NY 703.4.  But that standard sets a "*monthly* geometric mean" of 200 parts per 100 ml, as opposed to a daily mean.  *See id.* (emphasis added).

[3] Although Plaintiffs refiled alleging virtually identical CWA violations in the same timeframe as the prior action, they did not file a statement of relatedness or otherwise seek to have the case assigned to Judge Briccetti.  (*See generally* Dkt.)  In addition to being prudent, Plaintiffs were arguably required to take one of those two steps by Local Rule 1.6, which states that "each attorney appearing in a case must bring to the attention of the [C]ourt potentially related cases" to the extent required by this District's rules for the Division of Business. Speaking of those Division of Business rules, Plaintiffs initially filed the case in Manhattan even though all Parties reside in, and all events giving rise to the case occurred in, the Northern Counties.  (*See* Civil Cover Sheet (Dkt. No. 3); Compl. ¶¶ 1, 14–17.)  The Court makes no findings about the reasons why Plaintiffs pursued this path, but Counsel would do well to remember those rules in future cases.

**SPA8**

2023. (*See* Dkt. No. 15.) Plaintiffs responded, after which the Court held a pre-motion conference and set a briefing schedule. (*See* Dkt. Nos. 16–18.) Pursuant to that schedule, Defendant moved to dismiss on November 8, 2023. (Not. of Mot.; Def's Mem.; Grauer Decl.) Plaintiffs filed their Opposition on December 8, 2023, (Pls' Mem.), and Defendant replied on December 22, 2023, (*see* Reply Mem. of Law ("Def's Reply") (Dkt. No. 26)).

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

8

reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Daniel v. T&M Protection Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, as noted, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Bellin*, 6 F.4th at 473 (internal quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).[4]

---

[4] Defendant also moves under Rule 12(b)(1) because it claims that some of its arguments implicate subject matter jurisdiction.  (*See* Def's Mem. 10.)  But it is not entirely clear that the 12(b)(1) standard applies.  For context, Defendant's arguments concern the CWA's notice requirement for citizen suits, as spelled out in 33 U.S.C. § 1365(b)(1).  The Supreme Court has held that similar notice requirements are "mandatory conditions precedent to commencing suit" but expressly declined to decide whether they are "jurisdictional in the strict sense of the term"—i.e., whether failure to satisfy such a requirement is a nonwaivable defense that may be raised at any time under Rule 12(b)(1).  *See Hallstrom*, 493 U.S. at 31; *id.* at 23 n.1 (interpreting the Resource Conservation and Recovery Act ("RCRA") notice requirement, 42 U.S.C. § 6972(b)(1), but noting that several other statutes, including the CWA, incorporated substantially similar language); *see also Khudan v. Lee*, No. 12-CV-8147, 2015 WL 5544316, at

### B. Analysis

Defendant moves to dismiss arguing that Plaintiffs failed to provide adequate notice of their CWA claims and that, in any event, those claims are implausible. (*See generally* Def's Mem.) Plaintiffs disagree and, in the alternative, seek an opportunity to commence another action with adequate notice. (*See generally* Pls' Mem.)

### 1. The CWA Citizen Suit Notice Requirement

"The objective of [the CWA] is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To further that objective, the CWA states that "the discharge of any pollutant by any person shall be unlawful" "[e]xcept as in compliance" with certain statutory provisions. *Id.* § 1311(a). One such provision establishes a "[n]ational pollutant discharge elimination system" ("NPDES"), *id.* § 1342, which authorizes states to issue permits for the discharge of pollutants into navigable waterways, *see id.* § 1342(b). New York's program of issuing permits pursuant to this CWA provision is known as the State Pollutant Discharge Elimination System ("SPDES"), *see* N.Y. Env't Conserv. Law § 17-0105(13), and it forbids the "operat[ion] and use [of] a disposal system for the discharge of

---

*2 (S.D.N.Y. Sept. 17, 2015) (noting waivable affirmative defenses are "properly raised pursuant to Rule 12(b)(6), not 12(b)(1)").

Although several cases have decided similar motions under Rule 12(b)(1), *see, e.g.*, *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 152 (S.D.N.Y. 2010) (collecting cases but declining to take a position), the Court is not aware of any binding authority on this question. More broadly, the issue seems to be the subject of a circuit split, with five circuits treating Section 1365(b)(1) as jurisdictional, and two reaching the opposite conclusion. *See Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth.*, 4 F.4th 63, 72 (1st Cir. 2021) (collecting cases); *cf. Conservation Soc. of S. Vt., Inc. v. Sec'y of Transp.*, 508 F.2d 927, 938–39 & n.62 (2d Cir. 1974) (stating in dicta that Section 1365 did not present "an absolute barrier" to suit but "[a]ssuming arguendo that the district court had jurisdiction"), *vacated on other grounds sub nom. Coleman v. Conservation Soc. of S. Vt., Inc*., 423 U.S. 809 (1975). The Court takes no position on the issue here, however, as the defense has not been waived and the Motion would come out the same way under either Rule 12 standard.

sewage, industrial waste, or other wastes or the effluent therefrom, into the waters of the state," except in conformity with an SPDES permit, *id.* § 17-0701(1)(b).

In addition to enforcement by government agencies, the CWA allows for enforcement by private citizens via citizen suits in federal district court. *See* 33 U.S.C. § 1365(a). "[A]ny citizen may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." *Id*. § 1365(a)(1). However, no such action may be initiated "prior to sixty days after the plaintiff has given notice of the alleged violation . . . to any alleged violator of the standard, limitation, or order" and to federal and state authorities. *Id*. § 1365(b)(1)(A).

Strict compliance with this "notice provision is a mandatory, not optional, condition precedent for suit." *Hallstrom,* 493 U.S. at 26; *see also Riverkeeper, Inc. v. Coeymans Recycling Ctr. LLC*, No. 20-CV-1025, 2024 WL 779384, at *4 (N.D.N.Y. Feb. 26, 2024) (same); *Dragon Springs I*, 647 F. Supp. 3d at 292 n.6 (same); *see also Sarna*, 690 F. Supp. 2d at 152–53 (applying *Hallstrom* to the CWA notice requirement); *Klebe v. Tri Mun. Sewer Comm'n*, No. 07-CV-7071, 2008 WL 5245963, at *4 (S.D.N.Y. Dec. 17, 2008) (same); *City of New York v. Anglebrook Ltd. P'ship,* 891 F. Supp. 900, 906 (S.D.N.Y. 1995) (same). Such notice allows for the alleged violator to comply with the CWA, or for a government agency to attempt to bring the violator into compliance. *See Hallstrom,* 493 U.S. at 29. The minimum requirements for Section 1365 notice are set out in Environmental Protection Agency ("EPA") regulations, which provide that:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons

responsible for the alleged violation, the location of the alleged violation, the date
or dates of such violation, and the full name, address, and telephone number of the
person giving notice.

40 C.F.R. § 135.3(a); *see Sarna*, 690 F. Supp. 2d at 147 (same); *see also* 33 U.S.C. § 1365(b)(2)

("Notice under this subsection shall be given in such manner as the Administrator shall prescribe

by regulation.").

"In practical terms, the notice must be sufficiently specific to inform the alleged violator

about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit."

*Catskill Mountains*, 273 F.3d at 488 (quoting *Atl. States Legal Found., Inc. v. Stroh Die Casting

Co*., 116 F.3d 814, 819–20 (7th Cir.1997)).  The Second Circuit has clarified, however, that

courts should not "'allow form to prevail over substance' in considering the content required of

an NOI letter"; instead, they should look "to what the particular notice given may reasonably be

expected to accomplish" under the circumstances.  *Id*. (quoting *Dague v. City of Burlington*, 935

F.2d 1343, 1354 (2d Cir.1991), *rev'd in part on other grounds*, 505 U.S. 557 (1992)).

2.  Plaintiffs' NOI

Defendant contends that the NOI is riddled with deficiencies, and while the Court finds

them all compelling, it need only address some of them below.  The upshot is that, as before,

Plaintiffs' NOI is deficient because it "lacks sufficient information to enable [D]efendant to

identify [any] alleged violations."  *See Dragon Springs I*, 647 F. Supp. 3d at 291.

To start, the violation alleged on the face of the NOI is illogical.  The NOI begins by

recognizing that Defendant's SPDES Permit authorizes the discharge of wastewater containing

Fecal Coliform into ground water, subject to an effluent limitation of 200 parts per 100ml.  (NOI

at 3.)  The NOI's clearest statement of a violation is that:

From May 1, 2021 to the present, Dragon Springs is in violation of its SPDES
Permit by discharging Fecal Coliform through wastewater and storm water runoff
from point sources at the Compound to the surrounding surface waters.  Further, as

12

a result of the discharge by Dragon Springs the level of Fecal Coliform in the
surface water adjacent to Dragon Springs' compound is far in excess than the daily
mean of 200 parts per 100 ml.

(NOI at 3–4.) Tabling for now whether that paragraph is sufficiently specific, it gestures at one

distinct type of legal theory: that Defendant discharged compounds "in excess of [some] NPDES

permit limitation[]"—here, a limit on surface water discharges. *See Catskill Mountains* 273 F.3d

at 487; (*See* FAC ¶ 64 ("Dragon Springs discharged . . . Fecal Coliform from point sources to

waters of the United States in excess of the permissible amount set forth in Dragon Springs'

SPDES Permit.").) Defendant, however, points out a severe problem with this theory: neither

permit actually prohibits surface water discharges of Fecal Coliform. (Def's Mem. 6, 13–15 &

n.11; Def's Reply 1–2.) As for wastewater, the SPDES Permit does not contain any limitation

on such discharges. (*See generally* SPDES Permit.) And for stormwater, the CGP expressly

"authorizes stormwater discharges to surface waters of the State" subject to certain conditions.

(*See* CGP § I.A. (emphasis omitted).) It is true that in the *absence* of a permit, the CWA's

general proscription on discharging pollutants applies. *See* 33 U.S.C. § 1311(a). But it is

something of an oxymoron to suggest that Defendant violated its *permits* by discharging Fecal

Coliform into surface waters.

It follows that the NOI does not adequately notice a violation of one of Defendant's

permits. Similar cases consistently hold that the NOI must "identify the *specific* standard [or]

limitation" in the permit "alleged to have been violated." *See, e.g.*, *Dragon Springs I*, 647 F.

Supp. 3d at 291 (emphasis in original) (quoting *Karr v. Hefner*, 475 F.3d 1192, 1203 (10th Cir.

2007)). Perhaps because no such provisions exist to support this theory, Plaintiffs do not provide

a specific provision Defendant is alleged to have violated. The only one the NOI mentions is the

SPDES Permit's effluent limitation on groundwater discharges of Fecal Coliform. (*See* NOI at

2; SPDES Permit at 3.) But the NOI notably does not allege illegal groundwater discharges or

that groundwater discharges somehow migrated into surface water.[5]  It thus fails to adequately

notice any theory that Defendant violated its permits.  *See Nat'l Parks & Conservation Ass'n v.*

*Tenn. Valley Auth.*, 502 F.3d 1316, 1330 (11th Cir.2007) (rejecting as insufficient an NOI letter

that "broadly alleged" that a facility "violated 'all of the requirements'" of a permit); *Pub.*

*Interest Rsch. Grp. of New Jersey, Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3d Cir.1995)

(interpreting notice regulation to require plaintiff "to identify the specific effluent discharge

limitation which has been violated"); *CARS*, 2005 WL 3534178, at *7 ("Simply stating that the

Non-Federal Defendants 'have failed to conform' to the SPDES permit without describing the

manner in which they have failed does not place the Non-Federal Defendants on notice.").[6]

    Perhaps recognizing that the NOI's stated legal theory faced an uphill battle, Plaintiff

posits a different one in its Opposition brief.  Instead of claiming that Defendant was "*in*

---

[5] Although Plaintiffs do not allege a discrete violation on this basis, the Court notes that the NOI references the New York State water quality standard for coliforms, 6 CRR-NY 703.4, and asserts that Defendant's permit violation resulted in elevated levels of Fecal Coliform "in the surrounding waters."  (*See* NOI at 3–4.)  Assuming this portion of the NOI notices a discrete violation—again, which Plaintiffs do not claim—it would still be deficient.  The NOI offers no detail whatsoever about what, or where, these "surrounding waters" are, sufficient to allow Defendant to cure an alleged violation.  That type of generalized reference is insufficient for purposes of 40 C.F.R. § 135.3(a), as Defendant could "hardly have guessed" what Plaintiffs were referring to.  *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 802 & n.11 (9th Cir. 2009) (holding dismissal was appropriate where NOI made a general reference to wetlands but did not "give any detail whatsoever regarding just what 'wetlands' were allegedly being affected or how"); *CARS (Citizens Against Retail Sprawl) v. U.S. Army Corps of Eng'rs*, No. 04-CV-328E, 2005 WL 3534178, at *7 (W.D.N.Y. Dec.23, 2005) (dismissing claim where NOI "d[id] not state the waters into which the alleged stormwater is being discharged").

[6] Plaintiffs also repeatedly reference tests measuring elevated levels of Fecal Coliform in waters surrounding Defendant's compound.  (*See, e.g.*, Pls' Mem. 1, 7; Letter from E. Christopher Murray, Esq., to Court (July 17, 2024) (Dkt. No. 27).)  Yet, they never explain why these tests necessarily establish "improper discharges" by Defendant.  (*See* Pls' Mem. 13.)  More to the point, the tests provide no indication of what Defendant "is doing wrong" or what "corrective actions" it should take to comply with the CWA.  *See Catskill Mountains*, 273 F.3d at 488.

*violation of* its SPDES Permit," (Pls' Mem. 6 (emphasis added)), Plaintiffs claim that Defendant

discharged Fecal Coliform directly into surface water *without* a permit, (*see id.* at 9, 12, 13; NOI

at 3 ("Dragon Springs does not have any other permit authorizing such discharges [into surface

water]").) While it may seem like a matter of semantics, this way of framing the NOI presents a

distinct legal theory. Put simply, Plaintiffs first claimed that Defendant engaged in an authorized

activity but did so in violation of an applicable permit limitation. *See Catskill Mountains* 273

F.3d at 487. By contrast, this second theory says that Defendant engaged in a separate

unauthorized activity for which it "failed altogether to obtain a permit." *See Catskill Mountains*

273 F.3d at 488 (characterizing this type of claim as one "based on unpermitted discharges").

Following that second view, Plaintiffs now argue that "the violation of the CWA is that Fecal

Coliform is being discharged into the surface water without a permit." (*See* Pls' Mem. 9, 11,

12.) But Plaintiffs' present clarity makes their earlier ambiguity all the more apparent. If its

intent was so clear at the time, why did the NOI only state that Defendant acted "in violation *of*

*its SPDES Permit*"? (*See* NOI at 3 (emphasis added).) That language, coupled with the NOI's

reference to the SPDES Permit's effluent limitation, could reasonably lead a party to believe the

NOI was related the permit, not to something else. (*See* Def's Reply 4.) Plaintiffs, moreover, do

not explain how Defendant was supposed to parse these potential theories to reach its desired

interpretation. Indeed, when confronted with this ambiguity, Plaintiffs simply recite their new

theory instead of explaining why the NOI was specific and clear as written. (*See* Pls' Mem. 12–

13.)

 Plaintiffs' attempt to rely on a theory not clearly stated in the NOI is sufficient reason to

dismiss. Almost by definition, an NOI that does not state a given theory on its face cannot

"identify the specific standard, limitation or order [in its permit] alleged to have been violated."

*See* 40 C.F.R. § 135.3(a).  Courts have thus held NOIs insufficient where they "left [d]efendants

guessing as to the claimed violation," *Shark River Cleanup Coalition v. Twp. of Wall*, 47 F.4th

126, 136 (3d Cir. 2022), or forced defendants to "speculate as to all possible attacks on [their]

NPDES permit," *ONRC Action v. Columbia Plywood, Inc.*, 286 F.3d 1137, 1143 (9th Cir. 2002);

*see also Sierra Club Ohio Chapter v. City of Columbus*, 282 F. Supp. 2d 756, 766 n. 12 (S.D.

Ohio 2003) (rejecting plaintiffs' claim that general notice of violation was sufficient because

defendants "must have known the ways in which they violated their permits").  And that desire

for certainty makes good sense in light of the notice requirement's purpose.  Indeed, "[w]ere [the

Court] to exercise jurisdiction over [] claims when they were not disclosed by the citizen suit

notice, [it] would usurp the right of the applicable government agencies to evaluate and act upon

the merits of the claims prior to judicial review."  *See Ctr. For Biological Diversity*, 566 F.3d at

802 (quoting *ONRC Action*, 286 F.3d at 1144).  Further, that type of vague notice is unfair to the

alleged violator.  A recipient of an NOI alleging a permit violation reasonably responds by

assessing compliance with the conditions in that permit.  What a defendant may not think to do

in response to that NOI is to examine whether there are other proscribed discharges on its

property unrelated to its permitted activities.  In other words, the defendant in that scenario has

not received "the opportunity to bring itself into compliance" with the CWA that Section 1365

requires.  *See Hallstrom*, 493 U.S. at 26.

     Even assuming the NOI identified this new theory, it would still be insufficient for

another, independent reason.  In order to notice a discharge violation, an NOI must "identify[] a

point source," *Karr*, 475 F.3d at 1203, which refers to generally to "physical structures and

instrumentalities that systematically act as a means of conveying pollutants from an industrial

source to navigable waterways," *United States v. Plaza Health Labs., Inc.*, 3 F.3d 643, 646 (2d

Cir. 1993); *see also* 33 U.S.C. § 1362(14) (defining "point source" as "any discernible, confined and discrete conveyance" including, inter alia, "any pipe, ditch, channel, tunnel, conduit, well . . . or vessel" from which pollutants may be discharged); *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 219 (2d Cir. 2009) (noting that "point source" is "to be broadly interpreted" (quotation marks omitted)).  While that term has a wide sweep, it requires "[a]t its core . . . some facility" that "functions as a discrete, not generalized, conveyance." *Sierra Club v. Va. Elec. & Power Co.*, 903 F.3d 403, 410 (4th Cir. 2018) (quotation marks omitted).  The NOI's first crack at identifying a point source is a statement that there is a "steep slope" "on the northeast side" of Defendant's property containing "gullies and pathways from the Compound" that empty into the "Basher Kill and Neversink River."  (NOI at 2.)  Yet it is not entirely clear whether these gullies and pathways are point sources, as the NOI never states that they are a place "from which pollutants are or may be discharged."  33 U.S.C. § 1362(14).[7] Later on, when the NOI does reference discharges, it states that Defendant discharged pollutants "through point sources at the Compound 600 to 1,000 feet southwest of the bridge at Galley Hill Road into the waters of the United States."  (NOI at 4.)[8]  It is anyone's guess whether the "steep slope" on the northeast side of the property and the area "southwest of the bridge" refer to the same place.  But in either event, these statements—which simply identify areas of land marked by certain features—do not come close to identifying a "discernible, confined and discrete

---

[7] The Court views Defendant's characterization of the NOI as apt: although the NOI identifies "the endpoint where . . . pollutants enter waterways," the NOI does not appear to allege "a conveyance of stormwater or wastewater" from Defendant's facilities to that location.  (*See* Def's Mem. 20 n.16.)

[8] Plaintiffs use the same language to describe point sources for Defendant's alleged stormwater and wastewater discharges.  (*See* NOI at 4.)

conveyance" as required by 33 U.S.C. § 1362(14). Indeed, Judge Briccetti held that virtually

identical language failed to "identify the point source from which water is being discharged."

*See Dragon Springs I*, 647 F. Supp. 3d at 292. And that holding is of a piece with the broader

principle that identifying "the location of the alleged violations, rather than specific outfalls, does

not amount to identifying the 'point sources' where the alleged violations occurred."

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 621–22

(D. Md. 2011); *cf. Env't Prot. Info. Ctr. v. Pac. Lumber Co*., 430 F. Supp. 2d 996, 1011 (N.D.

Cal. 2006) (stating that a NOI failed to "identif[y] any discrete point source" where it did not

point to "culverts, ditches or conduits from which storm water or pollutants [were] discharged").

Plaintiffs resist, pointing out that they "need not identify every specific discharge point at

a facility" in its NOI. (*See* Pls' Mem. 11 (quoting *Puget Soundkeeper All. v. Cruise Terminals of

Am., LLC*, 216 F. Supp. 3d 1198, 1210 (W.D. Wash. 2015)); *see also id*. at 15 (citing additional

cases).) But Plaintiffs' cited cases still recognize that "the crux of proper notice" is whether a

NOI "sufficiently inform[s]" a defendant so they can remedy the alleged violation. *See Puget

Soundkeeper All.*, 216 F. Supp. 3d at 1210. That can hardly be said to describe the NOI here,

which alerts Defendant to discharges in an area that may be multiple acres in size.[9] Each one of

---

[9] Plaintiffs' lack of "access to the buildings involved," (*see* Pls' Mem. 15), does not
"absolve[e] [them] of the need to plead this key element." *See Riverkeeper, Inc. v. Hudson
Wholesalers Rest. Equip*., No. 22-CV-564, 2023 WL 6122850, at *11 (N.D.N.Y. Sept. 19, 2023).
Although cases have understandably held that plaintiffs need not state the location each source of
pollution where they lack access to the relevant area, they must still provide enough
information—at least a specific example—to give sufficient notice. Plaintiffs' supporting case
illustrates the point. (*See* Pls' Mem. 15.) There, a plaintiff organization stated that "light ballasts
of specific types of lights" were a point source of PCB pollution in New York City schools. *See
New York Cmtys. for Change v. New York City Dep't of Educ*., No. 11-CV-3494, 2012 WL
7807955, at *11 (E.D.N.Y. Aug. 29, 2012) *report and recommendation adopted*, 2013 WL
1232244 (E.D.N.Y. Mar. 26, 2013). The court rejected the notion that the organization had to
access each school to identify "each and every leaking PCB ballast," because its rather specific
point source description was enough for the defendant to "identify the problem." *See id*. By

those cases also speaks at a much higher level of specificity than Plaintiffs offer here.  Just as an

example, "drainage points in the cruise terminal that are near areas where mobile fueling and

other maintenance activities occur," does quite a bit more for a defendant than gullies on a steep

slope.  *See id*. (quotation marks omitted).  And other cases cited by Plaintiffs reinforce that

distinction.  *See Ecological Rts. Found. v. Pac. Gas & Elec. Co*., No. 09-CV-3704, 2010 WL

1881595, at *1 (N.D. Cal. May 10, 2010) (plaintiff alleged that PG&E utility poles were treated

with toxic chemicals and identified "fifty-three poles that allegedly violate the CWA and

RCRA"); *Pinoleville Pomo Nation v. Ukiah Auto Dismantlers*, No. 07-CV-2648, 2007 WL

4259404, at *4 (N.D. Cal. Dec. 3, 2007) (finding NOI adequately identified point source where it

"describe[d] the equipment used by defendants, as well as the defendants' facilities

themselves").[10]  Thus, while there may be some wiggle room in terms of the exact level of

specificity required to identify a point source, the NOI comes nowhere close to it.

For all those reasons, Plaintiffs have "failed to comply with the CWA's notice

requirement" and the Amended Complaint "must be dismissed."  *Dragon Springs I*, 647

F. Supp. 3d at 292; *U.S. E.P.A. ex rel. McKeown v. Port Auth. of New York & New Jersey*, 162 F.

Supp. 2d 173, 186 (S.D.N.Y. 2001) (dismissing CWA claims for insufficient notice where the

NOI did not identify "any specific effluent standards defendants allegedly violated under the

---

comparison, Plaintiffs' NOI fails to allege a specific outfall or any other discrete instrumentality
conveying Fecal Coliform to nearby waters.

[10] Plaintiffs also cite the Eighth Circuit's decision in *City of Kennett v. Environmental
Protection Agency*, 887 F.3d 424, 428 (8th Cir. 2018), which held that a water treatment plant
qualified as a point source under 33 U.S.C. § 1362(14).  (*See* Pls' Mem. 15.)  *City of Kennett*,
however, did not arise out of a citizen suit and thus did not consider the degree of specificity
needed to identify a point source in a NOI.  *See generally* 887 F.3d 424.  Of course, the NOI here
does not identify anything akin to a particular facility at Defendant's compound, or any source of
pollution from the compound for that matter.

CWA"), *aff'd sub nom. McKeown v. Delaware Bridge Auth*., 23 F. App'x 81 (2d Cir. 2001);

*Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Ctr., Inc*., 891 F. Supp. 152, 154 (S.D.N.Y.

1995) (dismissing CWA claim where, for several reasons, the plaintiff failed to "satisfy the

content requirements specified in 40 C.F.R. § 135.3(a)").[11]

    Defendant contends that this dismissal should be with prejudice, (Def's Mem. 24), and

the Court agrees.  As Defendant points out, this is Plaintiffs' second Action and fourth attempt to

state a CWA claim arising out of the same alleged discharges.  But despite repeated notice

regarding inadequacies in their NOIs, Plaintiffs have once again come up short, having failed to

address the deficiencies Judge Briccetti identified in the prior action.  *See Dragon Springs I*, 647

F. Supp. 3d at 292 (dismissing Plaintiffs' amended complaint).  Although first-time inadequate

notice dismissals are typically "without prejudice to refiling after full compliance" with the

CWA notice requirement, *see id*.; *Klebe*, 2008 WL 5245963, at *6 (same); *Catskill Mountains*,

273 F.3d at 489 (same), the Court is not aware of any case holding that Plaintiffs can keep

throwing NOIs at the wall until one sticks.  Courts do, however, "routinely deny" a "third bite at

the apple," which is what Plaintiffs effectively seek in a third action regarding the same claims.

*See Goldrich v. Watkins Wellness*, No. 22-CV-3769, 2024 WL 1194716, at *7 (S.D.N.Y. Mar.

20, 2024); *Binn v. Bernstein*, No. 19-CV-6122, 2020 WL 4550312, at *34 (S.D.N.Y. July 13,

2020) (collecting cases) (same), *report and recommendation adopted*, 2020 WL 4547167

(S.D.N.Y. Aug. 6, 2020); *see also Kamdem-Ouaffo v. Pepsico, Inc*., 160 F. Supp. 3d 553, 574

---

[11] The Court finds compelling, but need not consider, Defendant's additional argument that the NOI does not adequately identify the activity alleged to constitute a CWA violation. (*See* Def's Mem. 15–18 (citing *Karr*, 475 F.3d at 1201–03 & n.3 (finding the phrase "continuing construction activities" "fail[ed] to specify the activities that constituted the alleged violations" and stating that language was "hardly more helpful than a letter telling [the d]efendants merely that they ha[d] violated the CWA at each listed well site")).)

n.28 (S.D.N.Y. 2016) ("[T]he [c]ourt has given [p]laintiff two bites at the apple, and there is no

need for a third bite."); *cf. Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d

243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint

when he first amended, he clearly has no right to a second amendment even if the proposed

second amended complaint in fact cures the defects of the first.  Simply put, a busy district court

need not allow itself to be imposed upon by the presentation of theories seriatim." (alteration

adopted) (footnote and quotation marks omitted)).

3.  State Law Claims

Plaintiffs also allege a state law nuisance claim regarding the same conduct.  (FAC

¶¶ 70–76.)  Because the Court dismisses Plaintiffs' CWA claims, it declines to exercise

supplemental jurisdiction over this state law claim.  *See* 28 U.S.C. § 1367(c)(3) ("District courts

may decline to exercise supplemental jurisdiction over a claim . . . if the district court has

dismissed all claims over which it has original jurisdiction . . . .").  "In the usual case in which all

federal-law claims are eliminated before trial, the balance of factors to be considered under the

pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point

toward declining to exercise jurisdiction over the remaining state-law claims."  *Lara-Grimaldi v.

County of Putnam*, No. 17-CV-622, 2022 WL 17541815, at *4 (S.D.N.Y. Dec. 6, 2022)

(alteration adopted) (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs.

Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013)); *see also One

Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) (summary order)

("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to

decline to assert supplemental jurisdiction over any state law claims . . . .").

III.  Conclusion

For the foregoing reasons, Defendant's Motion is granted and the Action is dismissed with prejudice.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 19), and to close the case.

SO ORDERED.

Dated:    September 11, 2024
         White Plains, New York

_____
    KENNETH M. KARAS
    United States District Judge

**SPA23**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
MID-NEW YORK ENVIRONMENTAL
AND SUSTAINABILITY PROMOTION
COMMITTEE, INC., d/b/a,
NYENVIRONCON, ROBERT MAJCHER,
GRACE WOODARD, and ALEX SCILLA,

                              Plaintiffs,

           -against-                                        23 **CIVIL** 4870 (KMK)

                                                           **JUDGMENT**

DRAGON SPRINGS BUDDHIST, INC.,

                              Defendant.
-----------------------------------------------------------------X

          It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons

stated in the Court's Opinion & Order dated September 11, 2024, Defendant's Motion is granted

and the action is dismissed with prejudice; accordingly, the case is closed.

**Dated:**  New York, New York

          September 11, 2024

                                                  **DANIEL ORTIZ**
                                        _____
                                              **Acting Clerk of Court**

                              **BY:**        K. mango
                                        _____
                                                **Deputy Clerk**